UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 5:08MJ5017 |
| ) | |
| Plaintiff, ) | JUDGE JOHN ADAMS |
| ) | |
| v. ) | |
| ) | |
| STEPHEN PRITCHARD, ) | **ORDER AND DECISION** |
| ) | |
| Defendant. ) | |
| ) | |

This matter comes before the Court on Motion by the Defendant, Stephen Pritchard, for amendment or revocation of the magistrate judge's order of Pretrial Detention. The Court has been advised, having reviewed the Motion, exhibits, and transcript of the hearing before the magistrate judge. It is hereby determined that Defendant's Motion is DENIED.

**FACTS**

On February 1, 2008, Massillon police Detective Bobby Grizzard logged into a chat room entitled "FamilyFun." Grizzard described the chat room as "a special interest category where the primary interest is incest with underage and family members." Grizzard posed as an adult female named Lorie with a fourteen year old daughter. While in the chat room, Grizzard was sought out by an individual using the screen name "buttdaddy." This screen name was later identified as belonging to Defendant.

During the initial conversation, Defendant indicated that he was interested in watching an adult "play sexually with a child." Defendant then suggested meeting with the woman portrayed

1

online by Grizzard. A meeting was arranged at a restaurant near Massillon. Defendant then traveled from Indiana to Ohio to meet with the fictitious woman and her daughter. Upon arriving, Defendant was placed under arrest.

On March 17, 2008, a pretrial detention hearing was held before the magistrate judge. After hearing testimony from Grizzard, the magistrate judge also heard testimony from Defendant's sister, Ruthann Rotterdam, and from a longtime friend of Defendant's, Judith Lawrence. The magistrate judge also reviewed letters of support from three individuals associated with Defendant. On March 18, 2008, the magistrate judge issued his order, finding that pretrial detention was warranted. On March 28, 2008, Defendant moved to amend or revoke the magistrate judge's ruling on pretrial detention, the matter now pending before this Court.

## APPLICABLE LAW

18 U.S.C. § 3145(b) permits this Court to review the pretrial detention order of a magistrate judge.

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). When this Court "acts on a motion to revoke or amend a magistrate's pretrial detention order, [it] acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F.Supp. 2d 1125, 1129 (S.D. Ohio 2000).

2

A judicial officer must order a defendant detained if no condition will reasonably assure his/her appearance at trial or if there is a serious risk to the safety of others or the community.  18 U.S.C. § 3142(e).  A court, however, must consider all reasonable less restrictive alternatives to detention.  18 U.S.C. § 3142(e).

The Bail Reform Act of 1984 specifies that a finding that no conditions will reasonably assure the safety of another person or the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f).  However, no standard of proof is given for a finding that no conditions will reasonably assure the defendant's appearance.  Courts have held that such a finding must be supported by a preponderance of the evidence.  *United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Aitken,* 898 F.2d 104, 107 (9th Cir. 1990); *United States v. King,* 849 F.2d 485, 489 (11th Cir. 1988); *United States v. McConnell,* 842 F.2d 105, 110 (5th Cir. 1988); *United States v. Jackson,* 823 F.2d 4, 5 (2nd Cir. 1987); *United States v. Vortis,* 785 F.2d 327, 328-29 (D.C. Cir.) (per curiam); *United States v. Portes,* 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Orta,* 760 F.2d 887, 891 n.20 (8th Cir. 1985).

18 U.S.C. § 3142(g) sets forth factors that a court must consider when determining whether to release a defendant on bail/bond, with or without conditions, or order that he be held in custody until completion of trial.  The factors listed in Section 3142(g) are as follows:

> (1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

> criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Moreover,

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more[.]

18 U.S.C. § 3142(e). The Court will discuss each of the above factors as they relate to the facts in the case at bar.

## DISCUSSION

### A. NATURE AND CIRCUMSTANCE OF THE OFFENSE CHARGED

Initially, this Court notes that Defendant has conceded that the magistrate judge has probable cause to believe that he had committed the crime at issue. Furthermore, it is undisputed that Defendant faces a maximum term of thirty years incarceration if he is convicted. Consequently, a rebuttable presumption in favor of detention arises. 18 U.S.C. § 3142(e).

Defendant is charged with traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b) . The present charges are based on Defendant's conduct which occurred between February 1, 2008 and March 7, 2008. As detailed above, Defendant sought to meet with an adult female and watch her "play sexually" with her fourteen year old daughter.

## B. WEIGHT OF THE EVIDENCE AGAINST THE DEFENDANT

The evidence against Defendant is strong. Grizzard detailed his online encounter with Defendant during his testimony. Grizzard indicated that Defendant initiated the conversation about playing with a child sexually. Moreover, the affidavit filed in support of the charge against Defendant contains excerpts of those chat proceedings. When Defendant asked Grizzard's online persona Lorie whether she had ever "played" with her daughter, Lorie responded that she never had. Defendant replied, "Ok, I'm confused, so why do you enjoy incest chatrooms?" Defendant then later stated that he wanted Lorie "to have intense love with [your] very pretty daughter."

During this chat, Defendant exchanged photos with Lorie. Defendant also provided his home telephone number during the chat. During later conversations, Defendant brought up the idea of meeting with Lorie and her daughter. These later conversations included graphic descriptions of the sexual acts that Defendant sought to engage in with Lorie and her daughter. Specifically, Defendant stated to Lorie that he would like to see her perform oral sex on her daughter while Defendant had anal sex with Lorie. Defendant also encouraged Lorie to discuss these possibilities with her daughter.

Defendant initially scheduled the meeting with Lorie for February 29, 2008. Defendant became apprehensive about going to jail for his conduct and cancelled the meeting. Defendant then contacted Lorie again and stated that he had backed out because he was not yet comfortable with the situation. Defendant indicated that "[t]his is an extremely large step and the consequences are enormous from many angles." Based on further discussions he initiated, Defendant rescheduled the meeting in Ohio for March 8, 2008. However, due to pending inclement weather, Defendant again contacted Lorie and asked if he could arrive on March 7, 2008. Lorie agreed and Defendant drove

5

from Indiana to Ohio on March 7, 2008.

Upon arriving in Ohio, Defendant was taken into custody. Once in custody, Defendant admitted to using the screen name "buttdaddy." After initially denying it, Defendant also admitted to traveling to Ohio to engage in sexual activity with Lorie and her fourteen year old daughter. Consequently, there is strong evidence on the charge levied against Defendant.

### C. HISTORY AND CHARACTERISTICS OF DEFENDANT

Defendant claims that he has substantial ties to this community, asserting that he has had ties to Ohio for the entirety of his life. Defendant, however, ignores several key factors. First, by his own admission, Defendant has lived in Indiana since 1996. His residence and place of business are both located in Indiana. While Defendant's sister still lives in Ohio, there is no other indication of any ties to the state of Ohio. Moreover, Defendant's prior involvement with chambers of commerce and other community entities in Ohio appears to have ended or been severely reduced prior to his move to Indiana, more than a decade ago. Consequently, this Court finds that Defendant has little or no ties to this community.

The Court also recognizes that Defendant has no formal criminal history prior to this matter. Moreover, while this Court has considered the letters of support submitted by Defendant, it places little value on them. The individuals sending those letters were not subject to cross-examination, so their knowledge of this incident and its effect on their opinions is unknown.

### D. DANGER TO OTHERS OR COMMUNITY

#### 1. FLIGHT RISK

As detailed above, Defendant has no community ties to Ohio. Furthermore, testimony indicated that Defendant has no home base for his business. Instead, Defendant travels the country

to sell tailored clothing. When the question was posed to Defendant's longtime friend, Judith Lawrence, she indicated that Defendant's business was not tied to Indiana, Michigan, or Ohio and that Defendant could conduct his business anywhere. As a result, there is little to tie Defendant even to his home state in Indiana.

In addition to his lack of community ties and the fluid nature of his occupation, Defendant also faces a mandatory minimum prison term of ten years. Further, Defendant faces a maximum prison term of thirty years if convicted. These lengthy sentences coupled with the strong evidence against Defendant serve to increase the flight risk presented by Defendant. This Court, therefore, finds by a preponderance of the evidence, considering reasonable less restrictive alternatives, there are no conditions that will reasonably assure the Defendant's appearance at this trial.

**2. DANGER TO OTHERS**

In support of his argument that he is not a danger to others, Defendant asserts that "[t]his is not conduct in which [he] has previously engaged." (Doc #10, at p.8). Defendant, however, ignores the testimony given by Grizzard during the pretrial detention hearing. Specifically, Grizzard's testimony reveals as follows:

> Q. Okay. Now, while you were having a conversation with him, did he tell you whether or not he had ever done this before?
>
> A. He had indicated to me that on two other occasions he had attempted to meet a mother and an underage daughter for sex.
>
> Q. And did he tell you what happened on those two previous occasions?
>
> A. On one occasion, he canceled it. On a second occasion, the little girl, herself, was kind of leery of being involved in the situation, and she and the mother canceled.

Consequently, despite the claim made by Defendant, the evidence indicates that Defendant has attempted to engage in sex with a minor on at least three occasions.

Defendant also asserts that his own apprehension in arranging the meeting at issue in this matter demonstrates that he is not a danger. This Court disagrees.

Defendant canceled the first meeting with Lorie. Defendant explained to Lorie that "if your in it for real then okay with me." (Sic.) Defendant continued, "I don't have any doubt, other, than what we are discussing could put me in jail a Looong time." (Sic.) Defendant also expressed the need to keep the arrangement a secret. Contrary to Defendant's assertions, therefore, his actions and words work against him. The evidence demonstrates that Defendant was well aware that his conduct was illegal and that it carried a significant penalty. Despite this knowledge, Defendant continued to interact with Lorie and ultimately drove from Indiana to Ohio to pursue the illegal activity. These actions demonstrate that despite his knowledge of possible significant prison time, Defendant pursued sex with a minor. This Court, therefore, finds by clear and convincing evidence, considering reasonable less restrictive alternatives, that there is a serious risk to the safety of others and the community if pretrial detention is not ordered.

## CONCLUSION

This Court finds that no condition or combination of conditions will reasonably assure the appearance of the Defendant at trial and that if released from custody, even with possible conditions, would be a serious risk to the safety of others and the community. Therefore, the magistrate judge's grant of Pretrial Detention was proper. Defendant is to be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, away from persons awaiting or serving sentences or being held in custody pending appeal. Defendant is to be afforded reasonable opportunity for private consultation with counsel. It is further ordered that Defendant is to be delivered to the United States Marshals for any appearances with this Court in

connection with the above action.

    So ordered.

Date: April 3, 2008                                           s/John R. Adams
                                                                   JUDGE JOHN R. ADAMS
                                                                   UNITED STATES DISTRICT JUDGE